United States District Court
Southern District of Texas
**ENTERED**
February 28, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PRENTISE EMMANUEL PRATHER, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:22-0098 |
| § | |
| CITY OF CONROE, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Prentise Emmanuel Prather proceeds *pro se* and *in forma pauperis* in this civil rights suit. The defendant has moved for summary judgment (Dkt. 25). Prather has not responded to the motion, and the time to respond has expired. Having considered the pleadings, the motion and briefing, the applicable authorities, and all matters of record, the Court determines that summary judgment should be **granted** for the defendant. The Court's reasons are explained below.

### I.     BACKGROUND

Prather filed this suit when detained in the Montgomery County Jail. He filed an initial complaint (Dkt. 1) and, as instructed by the Court, an amended complaint (Dkt. 8).[1] Prather alleges that Officer Michael Moote of the Conroe Police Department (CPD) violated his rights on July 2, 2020, when Moote stopped and arrested him. On July 7, 2020,

---

[1] Although the amended complaint is the live pleading in this case, the Court also has considered the initial complaint and its attachments, as well as Prather's motion for a more definite statement (Dkt. 7) and his response to the defendant's answer (Dkt. 24).

the district attorney for Montgomery County filed a criminal complaint alleging that, on or about July 2, 2020, Prather knowingly possessed with intent to deliver a controlled substance, namely, Methylenedioxy Methamphetamine, in an amount of 4 grams or more but less than 400 grams (Dkt. 25-6; *see State v. Prather*, Case No. 20-07-08004, 435th District Court of Montgomery County (available at http://odyssey.mctx.org/Unsecured/default.aspx) (last visited Feb. 26, 2024)). On September 29, 2020, a grand jury indicted Prather for possession with intent to deliver a controlled substance under Texas Health and Safety Code § 481.112(d) (Dkt. 1, at 11).[2] On February 7, 2022, shortly after Prather filed the case at bar, the criminal charges against him were dismissed on the prosecutor's motion because the State could not prove its case beyond a reasonable doubt (Dkt. 7, at 7). Prather then was released, having been detained for approximately 18 months.[3]

Prather alleges that Officer Moote pulled him over based on a false allegation that he was speeding and that the illegal traffic stop led to an unconstitutional, warrantless search of the vehicle he was driving (Dkt. 8, at 4). During the search, Officer Moote found drugs in the vehicle. Prather states that a person named Tiffany Petit had placed the drugs

---

[2] *See* TEX. HEALTH & SAFETY CODE § 481.112(d) (eff. Sept. 1, 2009 to Aug. 31, 2023) (defining felony offense for possession with intent to deliver a controlled substance in Penalty Group 1 that weighs four grams or more but less than 200 grams).

[3] Prather previously brought a lawsuit in this district that raised civil rights claims about the same arrest. At the time, criminal charges related to the arrest remained pending against Prather. Therefore, on June 3, 2021, the court dismissed his claims under *Heck v. Humphrey*, 512 U.S. 477 (1994), among other grounds. *See Prather v. Conroe Police Department Officers*, Civil Action No. 4:21-0884 (S.D. Tex. June 3, 2021).

in the vehicle, which belonged to Petit's mother (*id.*; Dkt. 24, at 2). He submits a letter from another person stating that Petit, whom Prather claims was an informant against him, had admitted that she set Prather up for the arrest (Dkt. 1, at 11, 13). He claims that the eventual dismissal of the criminal proceedings against him, in addition to the fact that the municipal courts for the City of Conroe have no record of the traffic stop or a speeding violation, substantiates his claim that the stop was illegal (*id*. at 3; Dkt. 7, at 1-2).

Prather's complaint brings claims against Officer Moote under the First and Fourteenth Amendments to the Constitution (Dkt. 8, at 3). As relief for his claims, he seeks compensation for the arrest and false imprisonment, including lost wages and damages for his absence from his mother's funeral, among other relief (Dkt. 1, at 5-8; Dkt. 7, at 3-4, 8; Dkt. 8, at 4). On May 2, 2023, the Court ordered Officer Moote to answer the complaint (Dkt. 17).[4] Moote then filed an answer (Dkt. 22), a motion for summary judgment (Dkt. 25), and a supporting declaration (Dkt. 25-1).

Officer Moote avers in his declaration that, on the day of Prather's arrest, he was employed as a licensed peace officer with the CPD. He received information from CPD's Narcotics Division that a particular Chevrolet Trailblazer with an expired registration, which was suspected of transporting narcotics from Houston to Dallas, was travelling north on Interstate Highway 45. At approximately 10:15 a.m., Moote observed the vehicle and determined through use of his vehicle's speedometer that it was travelling 73 miles per

---

[4] Although Prather originally brought a claim against the City of Conroe, the Court dismissed the claim in the order to answer.

hour in a 65-mile-per-hour zone. Accompanied by Officer K. Troester of CPD in a separate vehicle, Officer Moote then stopped the suspect vehicle (Dkt. 25-1, at 1-2).[5] The traffic stop, as well as the subsequent events, are captured on video recordings from Officer Moote's vehicle and both officers' body cameras. *See* Dkt. 25-2 (dash camera video recording), Dkt. 25-3 (video recording from Moote's body camera), Dkt. 25-4 (video recording from Troester's body camera). Officer Moote states that, "[s]ubject to limitations of the camera angle and perspective," the videos "appear[] to be an otherwise accurate depiction of the occurrences recorded therein" (Dkt. 25-1, at 4).

Officer Moote states that Prather, who was the driver and sole occupant of the suspect vehicle, identified himself to Officer Troester and stated that he did not have his driver's license (*id.* at 2). The video recordings capture this conversation, although the exact words spoken occasionally are difficult to hear. At the officers' request, Prather exited his vehicle. Officer Moote states that, after getting out of the vehicle, Prather "suspiciously volunteered" a story:

> As soon as Prather exited the vehicle, he suspiciously volunteered what appeared to be a rehearsed story for the purpose of his travel and his relation to the vehicle. He told me and Officer Troester that he had been driving the vehicle to Dallas for the boyfriend of a woman he knew only as "Tiffy," in exchange for $200.00 dollars. His arrangement was to follow, or be followed by, Tiffy, whom he stated had been driving a separate vehicle. His stated plan was that the two of them would return to Houston together in the Trailblazer Prather was driving.

---

[5] *See* Dkt. 25-1, at 6-17 (CPD investigative report); Dkt. 25-5 (Houston Police Department investigative report).

4 / 15

(*id*. at 2-3; *see* Dkt. 25-3, at 1:00-3:30; Dkt. 25-4, at 1:00-2:00). Officer Troester ran a check on Prather's license and discovered that it had expired in 2003 (Dkt. 25-1, at 3). Officer Moote asked Prather if drugs or other illegal items were in the vehicle, and Prather replied that he knew of none (*id*.; *see* Dkt. 25-3 at 2:40-2:50). Moote states that, "[i]n the context of asking about drugs in the car," he then asked Prather for consent to search the vehicle and that Prather "consented to the search by words and by gesture" (Dkt. 25-1, at 3; *see* Dkt. 25-3, at 3:30-4:00). Prather agrees that he consented to the search.[6]

The video recordings capture Officer Moote's search of the vehicle, with Prather and Officer Troester standing nearby (*see*, *e.g.*, Dkt. 25-3, at 5:30-7:30). During the search, Moote found a backpack on the floor of the passenger-side back seat. Inside the backpack, he found a "large freezer bag containing numerous small baggies, each containing a green leafy substance that [he] knew from experience and training to be marijuana" (Dkt. 25-1, at 3; *see* Dkt. 25-3, at 6:30-7:00). He "observed the bottom of the backpack had been cut open, and another plastic bag pushed inside of it," which "contained a large quantity of different colored pills that were shaped and stamped with Alien heads" (Dkt. 25-1, at 3; *see* Dkt. 25-3, at 7:00-7:15). Moote "suspected [the pills] to be Ecstasy due to the packaging, color, and design of the pills" and tested them with a NIK

---

[6] *See* Dkt. 25-7, at 3-4 (in an affidavit dated July 29, 2020, and submitted in his criminal case, Prather stated that he "allowed the officer to search the vehicle because [he] had nothing to hide and certainly didn't know any drugs were in the vehicle"); Dkt. 24, at 3-4 (in Prather's response to the defendant's answer in the case at bar, he stated that Officer Moote "requested permission to search the vehicle and the plaintiff gave him consent to do so" but that, because Moote had requested the search, his consent was "not an independent act of free will" and thus was "invalid").

Methamphetamine/MDMA kit, which "yielded a positive result" (Dkt. 25-1, at 3). He estimated that he recovered 2.24 ounces of marijuana and 380 grams of Ecstasy from the vehicle. Based on "the large quantity of Ecstasy and the packaging of the marijuana," Officer Moote "believed the drugs were intended for sale" and thus arrested Prather at the scene for manufacture or delivery of a controlled substance (*id.*).

Prather has not responded to Officer Moote's summary judgment motion. However, in a response to Officer Moote's answer, he alleged that Moote made factual errors regarding the date of the arrest and the color of his vehicle (Dkt. 24, at 1-2 (stating that the Trailblazer was "smoke gray" rather than silver)). He further alleged that municipal courts have no record of a traffic citation against him written by Officer Moote; that the vehicle belonged to Petit's mother; that Petit had reported false information to CPD and placed the drugs in the vehicle Prather was driving; that the drugs belonged to Petit's boyfriend; that he had explained to the officers that he was making the round-trip trip to Dallas as a favor for a friend and for $200; that his consent to the search was invalid; and that "common sense" shows that he "had nothing to hide and would not have allowed the defendant to search the vehicle had he known drugs were in the vehicle" (*id.* at 2-5).

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment—Rule 56

The defendant has moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### B.     Qualified Immunity

When a defendant invokes qualified immunity, the plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (cleaned up). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (cleaned up). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (cleaned up). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

On summary judgment, the plaintiff has the burden to point out clearly established law regarding the right in question and to raise a fact issue as to the violation of that right. *See Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021); *Amador v. Vasquez*, 961 F.3d 721, 726-27 (5th Cir. 2020); *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016). A court must properly credit the plaintiff's evidence. *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021). "To negate a defense of qualified immunity and avoid summary

judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." *King*, 821 F.3d at 654 (cleaned up).

### C. *Pro Se* Filings

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to

construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

## III.   ANALYSIS

Prather brings his claims under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt*, 822 F.3d at 180. He brings claims under the Fourth and Fourteenth Amendments. Officer Moote seeks summary judgment based on qualified immunity.

### A.   Video Evidence

Officer Moote has submitted video recordings in support of his motion for summary judgment (Dkt. 25-2; Dkt. 25-3; Dkt. 25-4), which the Court has carefully reviewed. The recordings capture the traffic stop, Prather's consent to the search of his vehicle, the search, and his arrest. Because the video recordings show the relevant elements of the events, and because no party contests their accuracy or completeness, they are entitled to great weight, even at the summary judgment stage. *See Betts v. Brennan*, 22 F.4th 577, 581-82 (5th Cir. 2022) (citing, *inter alia*, *Scott v. Harris*, 550 U.S. 372, 381 (2007)); *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020). However, when material facts are disputed, "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 729-30 (5th Cir. 2018).

### B.     Fourteenth Amendment

Prather brings claims under the Fourteenth Amendment.  However, the Supreme Court has held that claims regarding pre-trial deprivations of constitutional rights arise under the Fourth Amendment and that there is "no Fourteenth Amendment 'liberty interest' or substantive due process right to be free from criminal prosecution unsupported by probable cause."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010) (citing *Albright v. Oliver*, 510 U.S. 266, 270-71 (1994)).  Therefore, his claims under the Fourteenth Amendment will be dismissed as a matter of law.

### C.     Fourth Amendment

The Fourth Amendment protects a person against unreasonable searches and seizures, including false arrest.  *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019).  In addressing Officer Moote's invocation of qualified immunity, the court must address "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true," constitute a violation of the Fourth Amendment, and additionally "whether the defendant's conduct was objectively reasonable in light of clearly established law."  *Carroll*, 800 F.3d at 169 (cleaned up).  The Court thus considers whether the facts, accepting Prather's version of disputed facts as true, constitute a violation of the Fourth Amendment.

When considering a traffic stop, which is a seizure under the Fourth Amendment, courts examine "whether the officer's action was justified at its inception" and then "whether the officer's subsequent actions were reasonable related in scope to the circumstances that justified the stop."  *See United States v. Brigham*, 382 F.3d 500, 506

(5th Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).  Officer Moote argues that the traffic stop was valid based on information received from the narcotics unit about the vehicle Prather was driving; the expired registration on the vehicle; and Prather's speed of 73 miles per hour in a 65 mile-per-hour zone.  *See* Dkt. 25-1, at 1-2; TEX. TRANSP. CODE § 502.407(a) (eff. Jan. 1, 2020, to Aug. 31, 2021) (defining offense for operating vehicle on a public highway with expired registration); *Taylor v. State*, 410 S.W.3d 520, 528 (Tex. App.–Amarillo 2013, no pet.) ("[a] law enforcement officer may lawfully stop a motorist who commits a traffic violation," including operating a vehicle with an expired registration); *Icke v. State*, 36 S.W.3d 913, 916 (Tex. App.–Hou. [1st Dist.] 2001, pet. ref'd) (a reasonable suspicion of speeding is sufficient to justify a traffic stop).  Although Prather makes a cursory allegation that Officer Moote "fabricated" the stop (Dkt. 24, at 2-3), he provides no supporting facts other than the absence of a traffic citation.  Officer Moote's declaration provides competent evidence demonstrating that the stop was justified, and Prather has not shown a genuine issue of material fact to the contrary.

Regarding the arrest, in order to demonstrate a violation of the Fourth Amendment, Prather must show that Officer Moote lacked probable cause:

> A constitutional claim for false arrest . . . requires a showing of no probable cause.  Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

*Arizmendi*, 919 F.3d at 897 (cleaned up) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000)).  Officers are entitled to qualified immunity unless "there was no actual probable cause for the arrest and

the officers were objectively unreasonable in believing there was probable cause for the arrest." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 31, 2017). The probable cause "may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest." *Id.* at 392 (citing *Club Retro*, 568 F.3d at 204). Here, Officer Moote's declaration is evidence that Prather admitted to driving without a valid driver's license and, moreover, that Officer Troester determined that Prather's license had expired (Dkt. 25-1, at 2-3). These circumstances supplied probable cause for his arrest, even before Officer Moote found controlled substances in the vehicle. *See* TEX. TRANSP. CODE § 521.021 (prohibiting operation of a motor vehicle on a highway without a driver's license); TEX. TRANSP. CODE § 521.025 (eff. Sept. 1, 2011 to Aug. 31, 2023) (defining offense for failure to carry driver's license while operating a vehicle); *Villarreal v. State*, 631 S.W.3d 198, 207 (Tex. App.–Hou. [14th Dist.] 2020, no pet.) (driving without possession of a license supplies probable cause for arrest).[7] Prather has not demonstrated a genuine issue of material fact as to the arrest.

---

[7] Additionally, under the independent intermediary doctrine, an arresting officer generally is insulated from liability for false arrest if the facts supporting the arrest are placed before an "intermediate intermediary" such as a grand jury. *Arizmendi*, 919 F.3d at 897 ("the intermediary's decision breaks the chain of causation for false arrest"). In such circumstances, even an officer who acted with malice is not liable for false arrest. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). The Fifth Circuit has held that the independent intermediary doctrine applies "even if the independent intermediary's action occurred after the arrest" and "even if the arrestee was never convicted of any crime." *Id.*

Here, a grand jury returned an indictment against Prather for possession with intent to deliver a controlled substance. Although an exception to the doctrine exists if a plaintiff affirmatively shows that the defendant maliciously withholds relevant information or otherwise "misdirect[s]" the grand jury "by omission or commission," *id.* at 554-55 (cleaned up), Prather has

13 / 15

Regarding the vehicle search, Prather agrees that he consented to the search by Officer Moote (Dkt. 24, at 3-4; Dkt. 25-7, at 3). This general consent to search the car supports the officer's search of unlocked containers within the car. *United States v. Iraheta*, 764 F.3d 455, 462-63 (5th Cir. 2014). When searching the vehicle, Moote found controlled substances in an unlocked backpack. Dkt. 25-1, at 3; Dkt. 25-3, at 6:30-7:30. The illegal drugs further supplied probable cause for Prather's arrest *See* TEX. HEALTH & SAFETY CODE § 481.112(d) (eff. Sept. 1, 2009 to Aug. 31, 2023) (defining felony offense for possession with intent to deliver a controlled substance in Penalty Group 1); *United States v. Rodriguez,* 702 F.3d 206, 209 (5th Cir. 2012) (noting that the Supreme Court has "allowed the warrantless arrest of all the passengers in a car in which drugs were found when none of them would claim ownership of the drugs in question"). Prather has not demonstrated a genuine issue of material fact as to the legality of the search.

Prather has not demonstrated a genuine issue of material fact on his Fourth Amendment claims regarding the traffic stop, arrest, or search. Additionally, viewing all disputed facts in the light most favorable to Prather, he has not demonstrated a genuine issue of material fact as to whether Officer Moote's conduct was objectively reasonable in light of clearly established Fourth Amendment law. *See Carroll*, 800 F.3d at 169. Therefore, Officer Moote is entitled to summary judgment.

---

not alleged facts that Officer Moote affected the grand jury proceedings. Moreover, Officer Moote avers in his declaration that he did not testify or otherwise participate in the grand jury proceedings that resulted in Prather's indictment (Dkt. 25-1, at 5). Thus, the independent intermediary doctrine supplies an additional basis for summary judgment on Prather's false arrest claim.

IV. **CONCLUSION**

For the reasons stated above the Court **ORDERS** as follows:

1. The defendant's motion for summary judgment (Dkt. 25) is **GRANTED**.

2. All of Prather's claims are **DISMISSED with prejudice**.

3. All other pending motions, if any, are **DENIED as moot**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____February 28_____, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE